[No. 19918.   Department One.   August 5, 1926.]

WALTON LUMBER COMPANY, *Appellant*, v. STATE BANK
OF EDMONDS, *Respondent*.[1]

[1] BANKS AND BANKING (22)—APPLICATION OF DEPOSITS TO SET OFF
BY BANK—WAIVER. A bank did not waive its right to offset debts
against a mill company's deposits by waiving its rights to a "log
fund" provided by a contract, to the extent of one dollar per
thousand advanced towards the fund by the mill company, which
advances were, by the contract, to be repaid "when and as said
shingles were sold"; where the advances were not so paid and
returned as required by the contract, but were deposited in the
bank and applied by it on the indebtedness.

Appeal from a judgment of the superior court for
Snohomish county, Bell, J., entered November 14, 1925,
upon findings in favor of the defendant, in an action to
recover upon a bank check, tried to the court.   Affirmed.

*W. A. Wells*, for appellant.

*Weter & Roberts* and *S. Harold Shefelman*, for re-
spondent.

ASKREN, J.—On March 15, 1923, the Edmonds Mutual
Mill Company, a corporation, entered into a contract
with the Walton Lumber Company, a corporation, to
create a log fund for the purpose of keeping the mill in
continuous operation.   By the terms thereof, the lum-
ber company was to advance the money to buy logs for
the mill company and to receive the sum of one dollar
per thousand feet therefor.   The mill company was to
manufacture shingles from the logs so purchased and
return the money so advanced, "when and as said
shingles were sold."   The mill company at the time in
question was indebted to the State Bank of Edmonds.
The bank endorsed a waiver on the contract between
the mill company and the lumber company, as follows:

[1]Reported in 248 Pac. 82.

"The State Bank of Edmonds, Edmonds, Washington, being a large creditor of the Edmonds Mutual Mill Company, the party of the first part in the within and foregoing contract, waives all claims in and to the logs and shingles purchased by the party of the second part or the funds derived from the sale therefrom to the extent of the money advanced by the party of the second part hereto plus $1.00 per M feet, board measure as set forth in said foregoing contract, reserving its rights as against the interest of the Edmonds Mutual Mill Company therein.

"State Bank of Edmonds, Edmonds, Wash.
"By H. E. Hanson, Pres."

Thereafter the contract was extended, and the extension accepted by the bank. The mill company ceased to do business in May, 1925. At that time, it gave a check to the lumber company for the total balance of its deposit account, in the sum of $620.75, which, upon presentation to the bank, was refused upon the ground that the amount thereof had been applied by the bank to the payment of a note due it by the mill company.

Suit was thereafter commenced to recover the amount of the check. Upon the trial of the action, it developed that, instead of the mill company making, or the lumber company requesting, payments "when and as the shingles were sold," according to the contract, the mill company was following the custom of depositing the proceeds of all sales in the bank and applying the same to its varied needs. If any funds were left, payments were then made from time to time to the lumber company. At the time of the trial there was a balance due of thirty thousand dollars. The court's finding upon this point was as follows:

"That the Edmonds Mutual Mill Company during all of said period had a general checking account with the defendant in which was deposited the full proceeds of all sales of shingles as well as all borrowed money and all other funds coming into the hands of the Ed-

monds Mutual Mill Company, and from which were paid all wages, operating expenses and all expenditures of the Edmonds Mutual Mill Company, including from time to time repayments of moneys advanced by the plaintiff and payments on account of the purchase of the mill operated by the said mill company. That no attempt was made to segregate the proceeds of the sales of shingles or to repay to the plaintiff from any particular shipments the money borrowed to purchase the logs which had produced the same. That on the contrary all funds were commingled in said account, and repayments were made to the plaintiff from time to time when surplus funds were available for such purpose.''

The court concluded as a matter of law that, since neither of the parties to the contract had attempted either to segregate the funds, or had made payments from the proceeds of sale according to the terms of the contract, the amount left on deposit and offset by the bank was not the proceeds of any fund contemplated by the parties. There was no testimony that the bank had any knowledge of the course of dealing, other than would naturally follow from the banking entries, and no showing was made that the bank acquiesced in the course of conduct.

[1] We think it clearly appears that, if the contract of waiver is to be construed as the lumber company desires, by permitting the mill company to use as much of the proceeds of the sale of shingles as it sees fit and, if any sums are left, to apply them on the lumber company's account, it follows that the practical effect thereof is to make the waiver of the bank extend to all proceeds of the sales of shingles; for all that would be required would be to allow the mill company to become delinquent in its payments, and then thereafter it would always be indebted to the lumber company more than its (the lumber company's) proportionate share of the

sale of a carload of shingles. It was not to waive all rights to any of the funds on deposit as long as any sum due the lumber company was unpaid, but was to waive only as to that portion of the proceeds that would belong to the lumber company under the contract. Waivers are to be strictly construed.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, BRIDGES, and FULLERTON, JJ., concur.